> facilities for areas to further streamline our organization and increase efficiencies. Finally, we are taking more aggressive steps to grow our core revenues, increase EBITDA and regain profitability as quickly as possible. We are seizing opportunities we have identified in several key vertical markets by hiring additional sales personnel during the third quarter.

39. Following this announcement, the price of Clean Harbors common stock declined from $9.50 per share to $6.23 per share, on heavy trading volume.

40. The market for Clean Harbors' common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Clean Harbors common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Clean Harbors common stock relying upon the integrity of the market price of Clean Harbors' common stock and market information relating to Clean Harbors, and have been damaged thereby.

41. During the Class Period, defendants materially misled the investing public, thereby inflating the price of Clean Harbors' common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

42. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Clean Harbors' business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically

positive assessment of Clean Harbors and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times.

43. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

44. Thus, throughout the class period, defendants issued materially false and misleading statements, which failed to disclose and misrepresent adverse facts.

## SCIENTER ALLEGATIONS

45. As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Clean Harbors, their control over, and/or receipt and/or modification of Clean Harbors' allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning Clean Harbors, participated in the fraudulent scheme alleged herein. Koenecke, as CFO, was responsible for financial reporting and communications with the market. Many of the internal reports showing Clean Harbors' forecasted and actual growth were prepared by the finance department under Koenecke's direction.

46. Defendant McKim's scienter is further evidenced by his entering into the Variable Prepaid Forward transaction detailed in ¶27. By selling forward his shares while at the same

time retaining the possibility of gaining from some of the upside movement in the price of Clean Harbors common stock should it increase, defendant McKim was able to protect himself against future declines in the price of Clean Harbors common stock which he knew were likely to occur once the truth was revealed to the market place.

47. Defendants were also motivated during the Class Period to inflate the Company's financial performance in order to enable the Individual Defendants to sell their personally-held Clean Harbors common stock to the unsuspecting market, as detailed in the following chart. These sales were unusual in timing and amount given the non-disclosure of material adverse facts concerning the Company and its business as detailed herein.

| Insider | Date of Sale | Number of Shares | Price Per Share | Value of Transaction |
|---|---|---|---|---|
| David M Parry, Senior VP | 1/9/03 | 11,000 | $15.30 | $168,245.00 |
| John P. Lawton, VP | 12/4/02 | 10,000 | $15.11 | $151,140.00 |
| William J. Geary, Executive VP | 1/10/03 | 7,400 | $15.56 | $115,144.00 |
| | | | | |
| Eric Gerstenberg, VP | 12/9/02 | 7,000 | $8.07 | $56,490.00 |
| | 12/24/02 | 2,000 | $16.35 | $32,700.00 |
| | | | | |
| Gene Cookson, Officer | 12/26/02 | 25,000 | $16.04 | $401,000.00 |
| | 12/30/02 | 8,300 | $16.00 | $132,800.00 |
| | 1/9/03 | 20,000 | $16.00 | $320,000.00 |
| | 1/10/03 | 28,700 | $16.13 | $462,902.30 |
| | | | | |
| Total: | | 112,400 | | $1,840,421.30 |

## APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

48. At all relevant times, the market for Clean Harbors securities was an efficient market for the following reasons, among others:

(a) Clean Harbors' stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, Clean Harbors filed periodic public reports with the SEC and the NASDAQ;

(c) Clean Harbors regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d) Clean Harbors was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

49. As a result of the foregoing, the market for Clean Harbors' securities promptly digested current information regarding Clean Harbors from all publicly available sources and reflected such information in Clean Harbors' stock price. Under these circumstances, all purchasers of Clean Harbors securities during the Class Period suffered similar injury through their purchase of Clean Harbors securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

50. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Clean Harbors who knew that those statements were false when made.

## FIRST CLAIM

### Violation Of Section 10(b) Of The Exchange Act And Rule 10b-5 Promulgated Thereunder Against All Defendants

51. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

52. During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including plaintiff and other Class members, as alleged herein; and (ii) cause plaintiff and other members of the Class to purchase Clean Harbors securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

53. Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Clean Harbors securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

54. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Clean Harbors as specified herein.

55. These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Clean Harbors' value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Clean Harbors and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Clean Harbors securities during the Class Period.

56. Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his/her responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was comprised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

57. The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Clean Harbors' operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by defendants' misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

58. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Clean Harbors' securities was artificially inflated during the Class Period. In ignorance of the fact that the market prices of Clean Harbors' publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, plaintiff and the other members of the Class acquired Clean Harbors securities during the Class Period at artificially high prices and were damaged thereby.

59. At the time of said misrepresentations and omissions, plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had plaintiff and the other members of the Class and the marketplace known the truth regarding the true financial position, operating conditions and expenses that Clean Harbors was experiencing, which were not disclosed by defendants, plaintiff and other members of the Class would not have purchased or otherwise acquired their Clean Harbors securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

60. By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

61. As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

## Violation Of Section 20(a) Of The Exchange Act

## Against the Individual Defendants

62. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

63. The Individual Defendants acted as controlling persons of Clean Harbors within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64. In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

65. As set forth above, Clean Harbors and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section

20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

WHEREFORE, plaintiff prays for relief and judgment, as follows:

(A) Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

(B) Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(C) Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(D) Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: December 22, 2003

**BERMAN DEVALERIO PEASE TABACCO BURT & PUCILLO**

By: ____________________
Michael T. Matraia, Esq.
One Liberty Square
Boston, MA 02109
Phone: (617) 542-8300
Fax: (617) 542-1194

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ, LLP**
Gregory M. Nespole, Esq.
Christopher S. Hinton, Esq.
270 Madison Avenue
New York, New York 10016
Telephone: (212) 545-4600
Facsimile: (212) 545-4653

**LAW OFFICES OF MARC S. HENZEL**
Marc S. Henzel, Esq.
273 Montgomery Ave., Suite 202
Bala Cynwyd, PA 19004
Telephone: (610) 660-8000
Facsimile: (610) 660-8080

343083

CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

Stanley Sved (" plaintiff ") declares, as to the claims asserted under the Federal Securities Laws, that:

1. Plaintiff has reviewed the complaint prepared by counsel and is willing to serve as a lead or named plaintiff in the Action on the basis of the allegations in that complaint or a substantively similar complaint or amended complaint to be filed. Plaintiff retains the Law Offices of Marc S. Henzel and such co-counsel it deems appropriate to associate with to pursue such action on a contingent fee basis.

2. Plaintiff did not purchase the Security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under the Federal Securities Laws.

3. Plaintiff is willing to serve as a lead or representative party, either individually or as part of a group on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff has made the following purchases during the Class Period in the stock of Clean Harbors, Inc. (NASDAQ: CLHB) that are the subject of this action except those set forth below:

| DATE | BUY OR SALE | AMOUNT OF SHARES | PRICE PER SHARE |
|---|---|---|---|
| 12/19/2002 | Purchased | 1000 | $16.99 |
| 12/31/2002 | Purchased | 500 | $15.54 |
| 2/5/2003 | Sold | 200 | $13.00 |
| 2/5/2003 | Sold | 300 | $12.98 |
| 2/12/2003 | Sold | 1000 | $12.82 |

5. In the past three years, plaintiff has not sought to serve as a representative party on behalf of a class.

In Re Polymedica Corp. Sec. Litig., Dist. Mass. 03-CV-11270 (appointed lead-p, case voluntarily dismissed)

6. Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

7. I declare under penalty of perjury that the foregoing Is true and correct. Executed this 2nd Day of December 2003.

Signature